**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILBUR LUCAS,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 04-1269** |
| | ) **Electronically Filed** |
| **JO ANNE B. BARNHART,** | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**July 12, 2005**

**I.      Introduction**

Plaintiff Wilbur W. Lucas brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act ("Act"), seeking review of the final determination of the Commissioner of Social

Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").

Consistent with the customary practice in the Western District of Pennsylvania, the parties have

submitted cross motions for summary judgment and the record developed at the administrative

proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported

by substantial evidence.  Therefore, the Court will deny the Plaintiff's motion for summary

judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor

of the Commissioner.

**II.     Procedural History**

Plaintiff filed an application for DIB on June 9, 1997, alleging a disability onset date of April 4, 1995, as a result of Depression, Sleep Apnea, Diabetes Mellitus (Type II), Hypertension, and Hyperlipidemia. (R. 32, 34).  Initially, the application was denied by the state agency. (R. 32-41).  Upon appeal, that decision was affirmed by ALJ Kenneth Andrews. Plaintiff's request for review by the Appeals Council was denied and Plaintiff does not seek to reopen the decision. (R. 13). Accordingly, ALJ Andrew's decision stands as the final determination of the Commissioner upon Plaintiff's application.  (R. 13).

Plaintiff subsequently filed a second application for DIB on June 10, 2002, alleging a disability onset date of June 29, 1997, as a result of Carpal Tunnel Syndrome, Diabetes Mellitus (Type II), Depression, Hypertension, High Cholesterol, and Sleep Apnea. (R. 65, 72, 77). Plaintiff's application for DIB was initially denied by the state agency.  (R. 29).  Upon reconsideration, a hearing was held before Administrative Law Judge William E. Kenworthy on February 3, 2004, whereby Plaintiff, represented by Walter F. Lober, Esq.,  testified. (R. 21, 222-240).  In addition, Frances Kinley, M.Ed., appeared and testified as a vocational expert ("VE"). (R. 13, 222-240).  On February 26, 2004, ALJ Kenworthy rendered a partially favorable decision for Plaintiff.  (R. 10-20).

ALJ Kenworthy found that Plaintiff has not been engaged in substantial gainful employment and has impairments that are considered "severe" under the regulations.  (R. 15, 19). Furthermore, Plaintiff's exertional limitations prohibit him from performing the *full* range of "light" exertional work contemplated by 20 C.F.R. §404.167. (R. 18, 19).  Accordingly, ALJ Kenworthy utilized Rule 202.14 of the Medical-Vocational Guidelines ("Grids") as a framework

for his decision-making.  (R. 18, 19). In his opinion, ALJ Kenworthy concluded that a significant amount of jobs existed in the national economy that accommodated Plaintiff's residual functional capacity and vocational factors. (R. 18, 19).  Hence, Plaintiff was deemed "not disabled."  (R. 18, 19). However, upon attaining the age of fifty-five on July 15, 2003, Plaintiff would be considered an individual of "advanced age." (R. 18).  By direct application of Rule 202.06 of the Grids, Plaintiff would be deemed "disabled."  (R. 18, 19).  Therefore, Plaintiff would be entitled to disability insurance benefits commencing July 15, 2003, but not prior thereto.  (R. 18, 19).

Pursuant to 20 C.F.R. §404.969, the Appeals Council exercised it's prerogative to conduct "own motion review."  (R. 7).  In a notice dated April 21, 2004, the Appeals Council proposed to issue a decision finding Plaintiff not entitled to a period of disability or disability insurance benefits commencing July 15, 2003.  (R. 7).  A claimant is required to have "disability insured status in the quarter in which he became disabled."  20 C.F.R. §404.131.  Moreover, to be entitled to a period of disability and disability insurance benefits, the claimant must have at least twenty quarters of coverage during a forty-quarter period ending with the quarter in which the period of disability begins.  Social Security Act, 42 U.S.C. §§ 416(i), 423.  Plaintiff's insured status expired March 31, 2003, the last date he carried the requisite twenty quarters of coverage. (R. 8).  Thus, Plaintiff was not entitled to a period of disability and disability insurance benefits commencing July 15, 2003 .  (R. 8).

The Appeals Council provided Plaintiff with an opportunity to submit additional evidence or request a hearing on the issues of:

> (1) whether he met the earnings requirements for entitlement to a period of disability and disability insurance benefits commencing July 15, 2003,
> > *or*,

(2) whether he was under a disability which began on or before the last date he met the earnings requirements for entitlement to a period of disability and disability insurance benefits.

(R. 7).

Plaintiff failed to submit additional evidence. (R. 8).   Hence, the decision of the Appeals Council stands as the Commissioner's final determination. (R. 8).  This appeal followed.

**III.    Statement of the Case**

     A.  Factual Background

     Born July 15, 1948, Plaintiff was fifty-five years of age when ALJ Kenworthy delivered his opinion. (R. 17).  Thus, Plaintiff was considered to be an individual of "advanced age."  20 C.F.R. §404.1563.  Furthermore, Plaintiff's formal training includes both secondary and post-secondary education.  (R. 14, 17).  Pursuant to 20 C.F.R. §404.1564, Plaintiff therefore possesses "more than a high school education."

     On June 29, 1997, Plaintiff ceased to perform substantial gainful work.  (R. 77).  Prior to that date, Plaintiff was employed by Prudential Financial Services, Inc., as an insurance sales representative. (R. 14, 78).  In that capacity, Plaintiff was employed for approximately twenty-seven years. (R. 78).  The Dictionary of Occupational Titles classifies an insurance sales representative as both "sedentary" and "light" exertional work.  (R. 238).  Based upon the testimony of a vocational expert, ALJ Kenworthy determined that such work is skilled due to the significant amount of training and licensure involved. (R. 236.)  However, due to Plaintiff's impairments,  these skills were non-transferable. (R. 17, 236-237).

     Plaintiff has several impairments, most notably, Carpal Tunnel Syndrome, Diabetes Mellitus (Type II), Depression, Hypertension, and Sleep Apnea.  (R. 77).  Obesity complicates

and compounds Plaintiff's symptoms. (R. 116-145, 196-214). Medical evidence submitted by

Drs. Lawrence Ferlan, Plaintiff's primary care physician, John Soffietti, Plaintiff's psychiatrist,

Samuel Han and Jay Newberg, consultative physicians, and Julie Uran, a consultative

psychologist, support such findings. (R. 116-170, 196-214).

Dr. Ferlan has prescribed Prinzide, Avandia, Lasix, Lopid, Lipator, Glucophage, and

Glucatrol to treat Plaintiff's High Blood Pressure, Hypertension, and Diabetes Mellitus (Type II).

(R. 116-145, 196-214). A wrist splint and Excedrin were used to alleviate the pain associated

with Carpal Tunnel Syndrome. (R. 94-95). Notably, Plaintiff's Sleep Apnea goes untreated,

leaving Plaintiff chronically fatigued, because the prescribed C-PAP machine is a poor fit.

(R. 96).

It appears that Plaintiff has faced an ongoing challenge in maintaining his blood sugar

levels within a normal range as well as his cholesterol and blood pressure. (R. 116-145, 196-

214). As a result, Plaintiff remains inflicted with severe pain in his lower extremities, numbness

in his feet, and fatigue from mild exertion. (R. 206). Updated medical records reveal significant

peripheral neuropathy and decreased sensation in Plaintiff's hands. (R. 196-214). In addition,

Plaintiff now suffers from +1 edema in the pretibial areas of both ankles and a diminished pulse

in his lower extremities. (R. 205). However, arterial Doppler studies reveals no

hemodynamically significant arterial changes. (R. 212).

Dr. Soffietti opined that Plaintiff meets the "criteria for recurrent major depression and

dysthymic disorder." (R. 195). In the course of treating Plaintiff, Dr. Soffietti has prescribed

Prozac and counseling. (R. 79, 102). Unfortunately, Plaintiff's mental impairments are

complicated by the aforementioned physical impairments. (R. 195). As a result, Plaintiff

remains depressed, cognitively slowed, chronically tired, and unable to sustain attention. (R. 195). "Given the complex interplay between his medical and neuropsychiatric condition," Dr. Soffietti believes that Plaintiff is precluded from any long term employment. (R. 195).

On September 25, 2002, Plaintiff underwent a psychological disability evaluation. (R. 163). In her report, Dr. Uran noted that Plaintiff maintained good eye contact with the evaluator and that his speech was coherent and spontaneous. (R. 164.) Furthermore, Dr. Uran opined that there is no evidence of "disturbance in thought process or neural sensory distortions," although Plaintiff's train of thought was disrupted on occasion. (R. 164-165). With respect to Plaintiff's ability to make occupational adjustments, Dr. Uran characterized Plaintiff's ability to deal with work stresses as "poor." (R. 169). Interestingly, Dr. Uran noted that Plaintiff suffers from stress-related headaches on a daily basis although Dr. Ferlan never intimated such. (R. 163). Moreover, on several occasions, Dr. Ferlan reported that Plaintiff denied suffering from headaches or other symptoms. (R. 116-145, 196-214).

B. The ALJ's Findings

The ALJ made the following findings:

1.   The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.   The claimant's Diabetes Mellitus, with Neuropathy, Sleep Apnea, Hypertension, Obesity, Bilateral Carpal Tunnel Syndrome, and Dysthymic Disorder are considered "severe" based on the requirements in the regulations 20 C.F.R. §404.1520(c).

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned [ALJ] finds the claimant's allegations regarding his limitations are generally credible for the reasons set forth in the body of the decision.

6.     The claimant has the residual functional capacity to perform tasks at the light exertional level, lifting up to 20 pounds occasionally and standing or walking about four hours per day. Claimant can perform simple, repetitive tasks, but has moderate impairment of his ability to maintain concentration and attention upon task and moderate limitations of recent memory and ability to deal with work stress.

7.     The claimant is unable to perform any of his past relevant work (20 C.F.R. §404.1565).

8.     The claimant was an "individual closely approaching advanced age" prior to July 15, 2003. On that date he became classified as an "individual of advanced age." (20 C.F.R. §404.1563).

9.     The claimant has more than a high school education (20 C.F.R. §404.1564).

10.    The claimant has no transferable skills from any past relevant work (20 C.F.R. §404.1568).

11.    The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. §404.1567).

12.    Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are significant number of jobs in the national economy that he could perform. Examples of such jobs include work as mail clerk, laundry/dry cleaning attendant or parking lot attendant. However, since July 15, 2003, a finding of disability is required by direct application of Rule 202.06.

13.    The claimant has been under a "disability," as defined in the Social Security Act, from July 15, 2003, through the date of this decision (20 C.F.R. §404.1520(f)).

C. Issues

Plaintiff asserts the following arguments in his brief in support of summary judgment:

A.     The administrative law judge failed to determine the frequency Plaintiff would
       need to alternate between sitting/standing when he concluded that Plaintiff can
       only perform a significant range of "light" exertional work due to Plaintiff's
       inability to stand for periods of time greater than four (4) hours;

B.     The administrative law judge substituted his personal medical opinion for that of a
       consultative psychological examiner thereby mischaracterizing Plaintiff's ability
       to tolerate work stress;

C.     The administrative law judge applied the Medical-Vocational Guidelines in a
       "mechanical" fashion and failed to determine whether Plaintiff was in a
       "borderline situation" thereby precluding Plaintiff from receiving disability
       insurance benefits; and

D.     The administrative law judge improperly discounted Plaintiff's subjective
       complaints and testimony concerning his work limitations.

## IV.  Standard of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by

42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
      Any individual, after any final decision of the [Commissioner] made after a
      hearing to which he was a party, irrespective of the amount in controversy, may
      obtain a review of such decision by a civil action . . . brought in the district court
      of the United States for the judicial district in which the plaintiff resides, or has
      his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
      The final determination of the Commissioner of Social Security after a hearing
      under paragraph (1) shall be subject to judicial review as provided in section
      405(g) of this title to the same extent as the Commissioner's final determinations
      under section 405 of this title.
42 U.S.C. § 1383(c)(3).

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383(f), regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dept of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Halter,* 247 F.3d 34, 44 n.7 (3d Cir. 2001)  ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290.  In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984);  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her

evaluation of medical records and documents for that of a treating physician: "an ALJ is not free

to set his own expertise against that of a physician who presents competent evidence" by

independently "reviewing and interpreting the laboratory reports" and other objective medical

evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

      To demonstrate disability under Title II or Title XVI of the Act, a claimant must

demonstrate an inability to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant

is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner

utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See*

*Sullivan*, 493 U.S. at 525.  The United States Court of Appeals for the Third Circuit summarized

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

>     In *step one*, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will
> be denied. . . . In *step two*, the Commissioner must determine whether the
> claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the
> claimant fails to show that her impairments are "severe", she is ineligible for
> disability benefits.
>
>     In *step three*, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to
> preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not
> suffer from a listed impairment or its equivalent, the analysis proceeds to steps
> four and five. *Step four* requires the ALJ to consider whether the claimant
> retains the residual functional capacity to perform her past relevant work. 20
> C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an
> inability to return to her past relevant work. . . .

11

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;  *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)(Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical

12

limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. §§ 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple Impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability

13

benefits." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971).  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *e.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation

14

obviously requires the ALJ to determine the extent to which a claimant is accurately stating the

degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c)

(2002); 20 C.F.R. § 416.929.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for

such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. The

United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or

other symptoms are alleged, the determination or decision rationale must contain a thorough

discussion and analysis of the objective medical and the other evidence, including the

individual's complaints of pain or other symptoms and the adjudicator's personal observations.

The rationale must include a resolution of any inconsistencies in the evidence as a whole and set

forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433,

*quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical

evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at

1195.  While "there must be objective medical evidence of some condition that could reasonably

produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-

71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to

pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may

discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37;

*Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp.

648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or

her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the

15

claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.2d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted). Moreover, the Commissioner/ALJ:

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including

17

symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for

the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of

medical opinions are on matters which require dispositive administrative findings that would

direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) and

20 C.F.R. §416.927(a-d) (2002)  (consideration and weighing of medical opinions) *with* 20

C.F.R. §404.1527(e) (2002) and 20 C.F.R. §416.927(e) (2002) (distinguishing medical opinions

on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §§ 404.1527(b), (d) and 416.927(b), (d) (2002).[3]  Medical

---

[3] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002) and § 416.927(d). Subsection (d)(2) describes the treatment relationship," and states:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. § § 404.1527 (e)(1-2) and 416.927 (e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner

20 C.F.R. § § 404.1527(d)(2) and 416.927(d)(2) (2002) (emphasis added).

[4] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2); 20 C.F.R. § 416.927 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6); 20 C.F.R. § 416.927 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(i); 20 C.F.R. § 416.927 (f)(2)(i). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion

evidence of non-examining sources at the administrative law judge and Appeals Council levels

of administrative review. 2. Administrative law judges and the Appeals Council may not ignore

these opinions and must explain the weight given to these opinions in their decisions.").

**V.  Discussion**

      A.     Failure to Identify a "Special Situation"

      Plaintiff argues that a "special situation" exists pursuant to SSR 83-12, which provides:

> [i]n some disability claims, the medical facts lead to an assessment of RFC which
> is compatible with the performance of either sedentary or light work except that
> the person must alternate periods of sitting and standing. The individual may be
> able to sit for a time, but must then get up and stand or walk for awhile before
> returning to sitting. Such an individual is not functionally capable of doing either
> the prolonged sitting contemplated in the definition of sedentary work (and for the
> relatively few light jobs which are performed primarily in a seated position) or the
> prolonged standing or walking contemplated for most light work.

20 C.F.R. §404.1657 defines 'sedentary' exertional work as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying
> articles like docket files, ledgers, and small tools. Although a sedentary job is
> defined as one which involves sitting, a certain amount of walking and standing is
> often necessary in carrying out job duties. Jobs are sedentary if walking and
> standing are required occasionally and other sedentary criteria are met.

'Light' exertional work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds. Even though the weight lifted may be very
> little, a job is in this category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing and pulling of arm
> or leg controls. To be considered capable fo performing a full or wide range of
> light work you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567.

      Plaintiff contends that the ALJ's decision "plainly finds that [his] residual functional

capacity is somewhere between the sedentary and light range."  (Plaintiff's Brief at 8).  As

evidence, Plaintiff cites the ALJ's determination that Plaintiff is incapable of performing the *full* range of activities characteristic of "light" exertional work; particularly Plaintiff's inability to stand or walk more than four hours in an eight-hour workday.  (R. 17-19). Hence, Plaintiff argues that his occupational base may have eroded and that the ALJ failed to make the required finding to determine the extent of erosion predicated upon the facts in the record.  SSR 96-9p.

SSR 83-12 describes a scenario where a claimant may be "able to sit for a time, but must then get up and stand or walk for awhile before returning to work."  Thus, a claimant would not be capable of "standing, off and on, for a total of approximately six hours of an eight-hour workday," characteristic of "light" exertional work nor the two hours of standing or walking characteristic of "sedentary" exertional work. 20 C.F.R. §§404.1567, 419.967.  The record does not indicate such a scenario exists. ALJ Kenworthy specifically found Plaintiff capable of standing/walking approximately four hours of an eight-hour workday. (R. 17).  Furthermore, Drs. Han and Newberg opined that Plaintiff can sit for an entire eight-hour workday if: given the option to sit/stand or provided with normal breaks, respectively. (R. 151, 154).

Plaintiff mischaracterizes the ALJ's determination of his RFC by stating he falls between "sedentary" and "light" exertional work.  (Plaintiff's Brief at 8).  Plaintiff's RFC is best characterized as being able to perform the *full* range of "sedentary" exertional work and a *significant* range of "light" exertional work. This determination is consistent with the record. (R. 18, 19).  Because Plaintiff's RFC is not capable of performing the full range of  "light"exertional work, ALJ Kenworthy appropriately utilized a VE to determine whether Plaintiff's occupational base had eroded pursuant to SSR 96-9p. (R. 18, 222-240).  Thus, Plaintiff's argument is without merit.

   B.   <u>The ALJ Substituted his Opinion for that of a Consultative Psychological
        Examiner thereby Mischaracterizing Plaintiff's Ability to Tolerate Work Stress</u>

_____An ALJ may not capriciously set his or her opinion against that of physicians who

present competent medical evidence. *VanHorn v. Schweiker*, 717 F.2d 871 (3d Cir. 1983).

Plaintiff argues that ALJ Kenworthy inappropriately substituted the medical opinion of Dr. Julie

Uran with that of his own.  (Plaintiff's Brief at 10).  As evidence, Plaintiff cites the record

whereby Dr. Uran characterized Plaintiff's ability to tolerate work stress as "poor."  (R. 169).  In

posing a hypothetical to the VE, the ALJ characterized Plaintiff as having a "difficult" time

tolerating work stress. (R. 237).  Furthermore, ALJ Kenworthy described Plaintiff as suffering

from a moderate impairment on his ability to tolerate work stress in his findings. (R. 19).

> While the ALJ may proffer a variety of assumptions to the expert, the vocational
> expert's testimony concerning a claimant's ability to perform alternative
> employment may only be considered for purposes of determining disability if the
> question accurately portray the claimant's individual and mental impairments. A
> hypothetical questioned posed to a vocational expert must reflect all of a
> claimant's impairments.

*Burns,* 312 F.3d at 123.  Accordingly, Plaintiff requests this Court to remand because the

hypothetical did not accurately portray his individual and mental impairments.  (Plaintiff's Brief

at 10).

   When a conflict exists in the evidence, the ALJ may choose whom to credit but cannot

reject for no reason or the wrong reason. *Plummer,* 186 F.3d at 429.  Thus, the ALJ must

consider all medical evidence and provide a reason for discounting the evidence she rejects.  *Id*.

ALJ Kenworthy stayed within these parameters.  The ALJ did not discount or discredit Dr.

Uran's assessment. (R. 17).  Rather, ALJ Kenworthy simply used different language in posing

the hypothetical question to the VE.  While "difficult" describes Plaintiff's ability to tolerate

work stress differently than "poor," the difference is not legally significant.

Dr. Uran characterized Plaintiff's ability to tolerate work stress as "difficult," but she also

made the following judgments:

- Plaintiff's ability to understand, remember and carry out complex job instructions is considered good;
- Plaintiff's ability to follow work rules, relate to co-workers, deal with the public, and use judgment is good;
- Plaintiff's ability to interact with supervisor(s), function independently, maintain attention/concentration is good.

(R. 169).  This characterization is consistent with a Mental Residual Functional Capacity

Assessment performed by Dr. Edward Zuckerman.  (R.173-174).  In addition, no episodes of

decompensation were documented.  (R. 16, 116-170, 195-214).

Viewing the record as whole, "difficult" is the functional equivalent of "poor" when

describing Plaintiff's ability to tolerate work stress.  Thus, the hypothetical reasonably

encompassed all the limitations suffered by Plaintiff, and the VE's testimony was in response to

a hypothetical that fairly set forth Plaintiff's limitation to tolerating work stress.  *Id*. at 431.  As

such, it can be relied upon as substantial evidence.  *Id.*

C.    The ALJ Applied the Medical-Vocational Guidelines in a "Mechanical" Fashion
       and Failed to Consider Whether Plaintiff was in a "Borderline Situation"

"The Act contemplates that disability determinations will be individualized and be based

on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Prior to

1978, vocational experts were utilized to determine whether, given a claimant's limitations and

abilities, a significant amount of jobs existed in the national economy that the claimant could

perform.  *Id.* at 263. However, to improve both the uniformity and efficiency of disability

determinations, the Secretary promulgated grids that establish the types and numbers of jobs that exist in the national economy for claimants with exertional impairments. *Id.* ("The grids consist of a matrix of four factors-physical ability, age, education, and work experience-and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.") *Id.* "Where a claimant's qualifications correspond to the job requirements identified by a rule, the grids direct a conclusion that work exists that the claimant can perform." *Id.* Thus, the "grids provide useful standards and allow for consistent, less complex decision-making." *Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985).

However, where a claimant's RFC or other vocational factors do not coincide precisely with the criteria of a rule, additional evidence must be adduced to determine what kinds of jobs or type of work may be either additionally included or precluded. *Sykes*, 228 F.3d at 269. Furthermore, 20 C.F.R. §404.1563(a) forbids the Commissioner from applying the grids 'mechanically' in a 'borderline situation.' A 'borderline situation' exists when "there would be a shift in results caused by the passage of a few days or months." SSR 83-10. "No fixed guidelines as to when a 'borderline situation' exists are provided since guidelines would reflect a mechanical approach." *Id*. However, the plain meaning of section 404.1563(a) is that where the claimant's age falls within a "few months" of the starting date of an age category, the grids should not be employed 'mechanically.' *Kane*, 776 F.2d at 1133.

> [T]here is an assumption inherent in the grids that a person within those categories has certain capabilities, but in a 'borderline situation' this assumption becomes unreliable and a more individualized determination is necessary.  It must be kept in mind that [grids] do not govern and indeed were not intended to govern all disability cases."

*Id.*

25

Because disability must be shown by expiration of insured status, the last day of insured status remains the appropriate date for determining applicability of the grids. *Daniels v. Apfel*, 154 F.3d 1129, 1132, n.4 (10th Cir. 1998).

Plaintiff's insured status expired March 31, 2003. (R. 8).  Although three months shy of attaining *"individual of advanced age"* status, ALJ Kenworthy classified Plaintiff as an *"individual approaching advanced age"* prior thereto. (R. 18, 19).  Had the ALJ classified Plaintiff as an *"individual of advanced age"* Plaintiff would have been entitled to DIB under Rule 202.06 of the grids.  (R. 18, 19).  Thus, Plaintiff argues that a 'borderline situation' existed and ALJ Kenworthy applied the grids in a 'mechanical fashion.' (Plaintiff's Brief at 10-13). Accordingly, Plaintiff requests this Court to remand.

Although Plaintiff cites "good law," he mischaracterizes the facts. ALJ Kenworthy did not exclusively rely upon the grids. (R. 19, 222-240).  Thus, a 'mechanical' application of the grids is precluded.  The ALJ utilized the grids only as a framework for decision-making because Plaintiff's RFC did not coincide with the factors of Rule 202.14. (R. 18, 19).  Furthermore, in accordance with SSA policy and *Sykes*, Plaintiff received an individualized disability determination regarding the effects of his physical and mental limitations upon his occupational base as evidenced by the ALJ's use of a VE.  (R. 222-240). Thus, contrary to Plaintiff's assertions, ALJ Kenworthy did not 'mechanically' apply the grids. Rather, utilizing Rule 202.14 as a framework for decision-making and considering additional evidence adduced at trial, such as the testimony of VE, the ALJ reasonably concluded that Plaintiff was "not disabled" prior to attaining *"individual of advanced age"* status.

26

D.     The ALJ Failed to Accord Significant Credibility to Plaintiff's
       Descriptions of his Physical and Mental Limitations

Significant credibility must be accorded to a claimant for DIB who has had a productive work history when describing his physical and mental limitations. See, e.g. *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979); *Podworney v. Harris*, 745 F.2d 210 (3d Cir. 1984). Plaintiff argues that the ALJ failed to communicate what weight, if any, he gave Plaintiff's subjective testimony regarding his limitations. (Plaintiff's Brief at 14). As such, Plaintiff requests this Court remand. (Plaintiff's Brief at 14).

Plaintiff's argument is inexplicable. ALJ Kenworthy specifically found Plaintiff's "testimony concerning his symptoms ... *generally credible*, since it is consistent with the reports of his treating physicians". (Emphasis Added) (R. 16.) Furthermore, the ALJ noted Plaintiff's long and consistent work history prior to the onset of his medical problems. (R. 16). Hence, there is no support on the record for Plaintiff's claim that the ALJ improperly discounted his testimony or overlooked his exemplary work history.

27

## VI.  Conclusion

Since Plaintiff suffers from severe medical impairments, the Court is not unsympathetic to his hardships. However, this Court is confined by statute to a highly differential standard of review. While this Court may have reached a different conclusion, the ALJ's decision is supported by substantial evidence.  Accordingly, the Court will deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:  All counsel of record as listed below

Karl E. Osterhout, Esquire
The Law Office of Karl E. Osterhout
570 Edgewood Towne Center Offices
1789 S. Braddock Avenue
Pittsburgh, Pennsylvania 15218

Paul E. Skirtich, Esquire
United States Attorney's Office
700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15219

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILBUR LUCAS,** | **)** | |
| Plaintiff | **)** | |
| | **)** | |
| v. | **)** | **Civil Action No. 04-1269** |
| | **)** | **Electronically Filed** |
| **JO ANNE B. BARNHART,** | **)** | |
| Commissioner of Social Security, | **)** | |
| Defendant | **)** | |

**ORDER OF COURT**

   **AND NOW**, this **12th day of July, 2005**, in accordance with the foregoing opinion, it is **HEREBY ORDERED** as follows:

   1.  Plaintiff's Motion for Summary Judgment is **DENIED.**

   2.  Defendant's Motion for Summary Judgment is **GRANTED.**

   3.  Judgment is entered in favor of the **DEFENDANT.**

           s/ Arthur J. Schwab
           Arthur J. Schwab
           United States District Judge

cc:  All counsel of record as listed below:

Karl E. Osterhout, Esquire
The Law Office of Karl E. Osterhout
570 Edgewood Towne Center Offices
1789 S. Braddock Avenue
Pittsburgh, Pennsylvania 15218

Paul E. Skirtich, Esquire
United States Attorney's Office

700 Grant Street, Suite 400
Pittsburgh, Pennsylvania 15219